Jacob J. Schwartzwald, J.
This proceeding is brought pursuant to section 25 of the General Corporation Law to set aside the election of directors and officers of Hopewell Products, Inc., A. B. C. Machinery Corp., Consolidated Instrument & Machinery Co., Inc. and G. H. Anderson Mfg. Co., Inc., as contrary to the express provision of the certificates of incorporation and the by-laws.
Petitioner and respondents Charles P. Vergoña and Paul 0. Puff each own 33%% of the stock of each of the four corporations. At the annual stockholders’ meetings of the four corporations on November 11, 1959, respondents Charles P. Vergoña *970 and Paul 0. Puff nominated and elected themselves and respondent Helen Puff, who was not a stockholder, as directors. Thereafter new officers were elected by these directors. Only 66%% of the votes were cast in favor of the nomination and election of these individuals. Petitioner claims that such action was in direct violation of the certificate of incorporation and by-laws of each corporation which provide that the board of directors shall consist of three stockholders and that the concurrent vote of 85% of the shares of stock shall be necessary for the transaction of any business at stockholders’ meetings.
Bespondents cross-move for an order directing the submission of the issue of the legality of the elections to arbitration pursuant to two stockholders’ agreements between petitioner and Charles P. Vergoña and Paul 0. Puff.
It appears from the stockholders’ agreement of September 18,1951 that petitioner was the sole owner of A. B. C. Machinery Corporation and Hopewell Products, Inc., and that Charles P. Vergoña and Paul 0. Puff were copartners doing business as Consolidated Instrument & Machine Co. The agreement provided for the dissolution of the foregoing businesses and the formation of three New York corporations to continue substantially the same businesses. The three parties to the agreement agreed to vote at all times for the election of each other as directors and officers of each corporation so long as they were stockholders of the corporation. If a party desired to retire from the business of any corporation and to dispose of his stock, he first had to offer his stock to the corporation; if the corpora1 tion did not purchase the stock, the offer was to be repeated to the other stockholders; and if they failed to purchase the stock, it could then be offered for sale to the public. In the event a stockholder tendered his stock he had to resign as a director and officer of the corporation. The agreement further provided that: “In the event any dispute arises hereunder, relating to the construction of any of the provisions of this agreement, or with respect to any other matter of whatsoever kind, nature or description in anywise provided herein, or arising in the course or conduct of the corporations’ business among their stockholders, * * * such dispute shall be submitted to arbitration ’ ’.
Similar provisions are contained in a second agreement dated July 19, 1952 between the same parties and G-. H. Anderson Mfg. Co. Inc.
On November 17, 1958 petitioner sent letters to each corporation and to the two other stockholders offering his stock for sale pursuant to the agreements. He further stated therein : *971 ‘ ‘ Enclosed herewith is my resignation as director and officer of said corporation, which shall become effective immediately upon the exercise by the corporation, and/or said stockholders of their right of election under said agreement to purchase the stock.”
Neither the corporations nor Charles P. Vergoña and Paul 0. Puff accepted the offers and petitioner retained his stock representing his one-third interest in each corporation.
Respondents contend that when petitioner tendered his stock and submitted his resignation as director, conditioned upon the acceptance of the tender, that the provision in the agreements requiring that a director be a stockholder was no longer operative, and that the two other stockholders constituted the quorum necessary to transact business. They further urge that an arbitrable dispute with respect to the validity of the corporate elections is presented.
There is no merit to respondents’ contentions. No arbitrable dispute is presented, since the dispute here involved is not within the ambit of the provision for arbitration in the stockholders’ agreements. The agreements do not purport to permit arbitration of an issue as to voting rights of a stockholder.
This proceeding is predicated upon petitioner’s claim that invalid corporate elections were held in direct violation of the express provisions of the certificates of incorporation and bylaws of four corporations, which require the concurrent vote of 85% of the shares to validate any action at stockholders’ meetings and further require that all directors be stockholders. The validity of the corporate elections is governed by the certificates of incorporation and by-laws of each corporation and not by the stockholders’ agreements (Matter of Scuderi, 265 App. Div. 1054). Moreover, petitioner had an absolute right to vote at the annual stockholders’ meetings based upon his ownership of one third of the stock of each corporation. His rights as a stockholder are derived from the corporate charters and by-laws and not from the stockholders’ agreements. The voting rights of stockholders are fixed by the corporate charter and are immune from change except by amendment to the certificate of incorporation (Matter of American Fibre Chair Seat Corp., 265 N. Y. 416; Stock Corporation Law, § 47). The right of a stockholder to vote for directors is a vested property right entitled to protection under the Constitution, limited only by the provisions of the certificate of incorporation or other certificates filed pursuant to law (Page v. American & British Mfg. Co., 129 App. Div. 346; see Lord v. Equitable Life Assur. Soc., 194 N. Y. 212, 228).
*972 Accordingly, the elections of November 11, 1959 are adjudged void and new elections are directed, and the cross motion for an order directing arbitration is denied. Settle orders on notice.